UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MATRIX NORTH AMERICAN CONSTRUCTION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:20-CV-92-PPS-JEM |
| ADVANTAGE INDUSTRIAL SYSTEMS, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Five former employees of Plaintiff, Matrix North American Construction, Inc., jumped ship after the company lost U.S. Steel, its biggest steel client, and they took with them a treasure trove of documents to their next employer, Advantage Industrial Systems, Inc. About six months after filing the complaint in this matter, Matrix filed this Motion for Preliminary Injunction. [DE 53.] Despite the fact that AIS has turned over thumb drives to a third-party forensic examiner which showed the stolen information has largely not been accessed, Matrix still seeks an order that Defendants may not use or rely upon any of Matrix's confidential information or trade secrets and for a forensic examination to identify any of Matrix's information that remains in Defendants' possession, so it can be destroyed. Because I find that Matrix is not suffering from irreparable harm, an injunction is not warranted.

**Factual Background**

I held a hearing in this matter on February 8, 2020, at which James Faroh, the previous Vice President of Industrial and current Special Projects Advisor at Matrix,

testified at length. Matrix provides procurement, construction, maintenance and repair services to energy and industrial markets in North America. Matrix's steel business used to consist of two main disciplines: steel maintenance and capital construction. [Faroh Dec., DE 54-1, ¶ 10.] On the steel maintenance side, Matrix had two main customers: U.S. Steel and ArcelorMittal. However, in the Fall of 2019, Matrix got into a dispute with U.S. Steel over a project in Ohio, and on January 17, 2020, U.S. Steel ordered Matrix off of the project and cut ties with Matrix. [Joint Stip. Of Fact, DE 78, ¶ 34.] Matrix's only other steel maintenance customer was ArcelorMittal. Because it made no sense to maintain a whole division for steel maintenance when it only had one customer, Matrix decided to get out of the steel maintenance business altogether. On February 5, 2020, Matrix formally announced its decision to exit the steel maintenance portion of its business in the United States. [Faroh Dec. ¶ 142.]

At around the same time that the Matrix/U.S. Steel dispute in Ohio was percolating, the 5 individual defendants in this case left Matrix to go to work for AIS. Most of the individual defendants resigned from Matrix at the beginning of February 2020, and some like Steven Harker, II left earlier. It seems pretty clear that, perhaps with the exception of Harker, the employees could see the writing on the wall that their jobs would be in jeopardy if they stayed with Matrix. So they all left in short order at around the same time. What is equally clear is that when they left, they took with them to AIS a cache of documents including templates, information from the operations handbook, pricing information, and forms that Matrix uses in its business. Matrix argues that the five defendants leaving (and taking confidential information over to

AIS), factored into the decision to discontinue its steel work. But the evidence at the hearing shows that this confuses cause and effect. The employees abandoning ship didn't cause Matrix to lose the business; it was the effect of it. Indeed, the relationship between Matrix and U.S. Steel had begun to deteriorate several months before the employees jumped ship. And when U.S. Steel formally put an end to the relationship, as Mr. Faroh testified, it didn't really make sense for Matrix to continue in its steel maintenance side of the business for only one customer.

So where do things stand right now between Matrix and AIS? According to Mr. Faroh, Matrix does not currently do steel maintenance work, and has no plans to get back into steel maintenance business. On the flipside, AIS does not do capital construction work, and Mr. Faroh could not think of an instance where AIS competed against Matrix for capital construction work. The takeaway is that, presently, AIS is in the steel maintenance business without competition from Matrix. And vice versa, Matrix remains in the capital construction business without competition from AIS. In short, they aren't competitors.

## Discussion

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it."). "In

3

order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

The party seeking the injunction must first show a reasonable likelihood of success on the merits of its claims and a sufficiently imminent threat of irreparable harm to it if no injunction is issued. *See Aircraft Owners and Pilots Ass'n v. Hinson*, 102 F.3d 1421, 1424 (7th Cir. 1996). If the moving party meets these two criteria, then the court must balance the harms of erroneously granting or erroneously denying injunctive relief, and must consider the public interest, including the effect an injunction or the absence of an injunction would have on the interests of people not before the court. *Id.*

In this case, even giving Matrix the benefit of the doubt and assuming that it is reasonably likely to succeed on the merits, a preliminary injunction is still not appropriate because Matrix hasn't shown that it will suffer irreparable harm absent injunctive relief. In other words, I never make it to the balancing test because Matrix has not shown that it will be irreparably harmed if no injunction is entered.

Matrix argues that the loss of its exclusive use of its confidential information and trade secrets alone constitutes irreparable harm. [DE 54 at 15-17.] I don't think this is enough. There is simply no proof of continuing irreparable harm in this case. It is undisputed that Matrix is no longer in the steel maintenance business, U.S. Steel is no

longer its client, and Matrix now only does capital construction in the United States. And it is undisputed that AIS does not do capital construction work, but does steel maintenance instead. In other words, they really aren't competitors. Matrix has left the industry that AIS is in. While there may have been some initial harm done when the individual employees left Matrix and took information with them to AIS, courts have held that there is no irreparable harm to justify an injunction when a plaintiff alleges that "the damage is done." *Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2254, 2018 WL 5298527, at *9 (N.D. Ill. Oct. 25, 2018). Allegations of past irreparable harm are insufficient to support a preliminary injunction – the plaintiff has to demonstrate that it will suffer *future* harm in the interim, prior to the final resolution of the lawsuit. Matrix has not done this. Moreover, while these documents may have made it easier for AIS to quickly gain U.S. Steel as a client, this was not to Matrix's detriment. The relationship between U.S. Steel and Matrix had deteriorated to such an extent that the likelihood of it ever being resuscitated is remote. So Matrix no longer works for U.S. Steel and has no prospect of doing so in the near future. Because it is no longer in the steel maintenance business, it is difficult to see how it will be harmed in that business moving forward.

What's more, although there is an abundance of evidence that the former Matrix employees stole a trove of documents on their way out the door, there is scant evidence that AIS is actually using those documents. Matrix's counsel conceded at the hearing that he did not have specific evidence of the individual defendants or AIS using any of the information that was taken. Mr. Faroh testified he was not aware of AIS using any confidential Matrix information to land any capital construction business and he was

5

not aware of any circumstances showing AIS is threatening or planning to use any Matrix confidential information.  Mr. Faroh was also not aware of any of the individual defendants doing anything to currently interfere with Matrix at all.

There is also the evidence from the forensic computer specialist.  The parties disagree as to the conclusion to be drawn from the forensics.  AIS claims it shows that the information was never accessed after the individual defendants left Matrix. [DE 66 at 17; DE 66-8.]  But Matrix contends that the "last accessed" date shows that some documents were downloaded/accessed recently. [DE 67 at 9.]  Nevertheless, the parties' joint stipulation of facts about the forensics reflects that most of the thousands of documents were accessed or modified only before the individual defendants left Matrix. [DE 76.]  In other words, most of the stolen documents were never accessed after the employees left their employment with Matrix.  That is also evidence that the risk of future irreparable harm is fairly remote in this case.

Although Matrix claims that irreparable harm exists in all cases like this involving misappropriation of trade secrets, this is a mischaracterization of the law.  The cases cited by Matrix are distinguishable.  For example, the court in *Badger Daylighting Corp. v. Palmer*, No. 1:19-cv-02106-SEB-MJD, 2019 WL 4572798, at *12 (S.D. Ind. Sept. 20, 2019), found an injunction was necessary in part because of the defendant's "reticence in taking responsibility for his wrongful taking of Badger's business documents has complicated the Court's and the parties' ability to resolve these issues without injunctive relief."  Matrix's conduct was quite different in this case, as it has already given the drives with AIS information to a forensic specialist and has

6

worked with Matrix to resolve the document issue. In *CDW LLC v. NETech Corp.*, 722 F.Supp.2d 1062, 1064 (S.D. Ind. 2010), the court ruled that "[w]hen an employee has been hired in violation of an employment agreement, Indiana courts will infer that the plaintiff has been irreparably harmed." And in *CDW*, the defendant did not advance any rationale to rebut the inference. *Id.* Here, Matrix has not showed that there were any contractual provisions that would have prevented the individual defendants from going to AIS, and AIS *has* put forth evidence and argument that Matrix is not being irreparably harmed. Last, *HCAFranchise Corp. v. Alisch*, No. 3:16-cv-476, 2016 WL 10706285, at *7 (N.D. Ind. Aug. 12, 2016), involved misappropriating trade secrets and violating a covenant not to compete between competitors and even there, the court found the trade secret misappropriation gave rise to a presumption of irreparable harm, which was unrebutted.

Even if I apply a presumption of irreparable harm in this case, AIS has successfully rebutted that presumption. Therefore, Matrix cannot succeed by arguing it is necessarily suffering irreparable harm just because its former employees took some documents to AIS on their way out the door.

Because I find that Matrix will not suffer irreparable harm without an injunction, its request for a preliminary injunction is denied. This isn't to say that Matrix might not ultimately be meritorious in its underlying claims in this lawsuit. I just don't believe the extraordinary remedy of an injunction and requiring AIS to submit to a forensic expert evaluating all personal and business accounts on their e-mail and electronic devices is justified.

## Conclusion

For the above-referenced reasons, Plaintiff, Matrix North American Construction, Inc.'s Motion for Preliminary Injunction [DE 53] is DENIED.

SO ORDERED.

ENTERED: February 17, 2021.

                                              /s/ Philip P. Simon  
                                              PHILIP P. SIMON, JUDGE  
                                              UNITED STATES DISTRICT COURT